UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRHISTIAN BERNAL MORALES,

Plaintiff,

-v-

WILLIAM P. JOYCE *et al.*,

Defendants.

26 Civ. 6723 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On August 6, 2026, petitioner Crhistian Bernal Morales, a noncitizen, was arrested and detained at 26 Federal Plaza in Manhattan by Immigration and Customs Enforcement ("ICE") during a scheduled immigration check-in. He now petitions for a writ of habeas corpus. He contends that, insofar as he is a noncitizen whose detention is subject to 8 U.S.C. § 1226(a), ICE violated his due process rights when it arrested him without individualized consideration and based on a mistaken understanding that such individualized consideration was unnecessary.

For the reasons that follow, the Court grants the petition and orders Bernal Morales's immediate release.

## I. Background[1]

### A. Bernal Morales's Arrival and Residency in the United States

Bernal Morales, age 36, is a citizen of Colombia. Dkt. 12-1. In September 2022, he entered the United States through Texas without inspection. Dkt. 13 ("Rodriguez Decl.") ¶ 2.

[1] This account draws on the following materials: Bernal Morales's amended petition, Dkt. 6 ("Pet."); the declaration of ICE Deportation Officer Jaime Rodriguez, Dkt. 13 ("Rodriguez Decl."); the transcript of the hearing the Court held on August 13, 2026 ("Tr."); and exhibits submitted by ICE related to Bernal Morales—to wit, a September 18, 2022 Record of Deportable/Inadmissible Alien, Dkt. 12-1; an August 6, 2026 Record of Deportable/Inadmissible

Shortly thereafter, he was detained and then paroled into the United States. *Id.* ¶¶ 3–4. In November 2022, his parole was terminated. *Id.* ¶¶ 4–5. He was not placed under supervision at that time. Tr. at 4. On May 30, 2023, Bernal Morales filed a petition for political asylum, which remains pending. Pet. ¶ 1; Rodriguez Decl. ¶ 6.

It is undisputed that, in the four years since Bernal Morales entered the United States, he has been law-abiding and has complied with all conditions of release. Pet. ¶ 1; Tr. at 3–4. Removal proceedings for him have not been initiated. Pet ¶ 1.

**B. Bernal Morales's 2026 Detention**

On August 6, 2026, Bernal Morales reported for a scheduled check-in at 26 Federal Plaza. Rodriguez Decl. ¶ 7. The check-in was the first that ICE had ordered since the termination of Bernal Morales's parole in November 2022. Tr. at 4–5.

At the check-in, Bernal Morales was arrested and was served with an arrest warrant citing INA § 236—*i.e.*, 8 U.S.C. § 1226—as its statutory basis. Dkt. 12-5. The same day, an ICE agent completed a Notice of Custody Determination, which also cited INA § 236 as the exclusive basis for Bernal Morales's arrest and stated that ICE had concluded that Bernal Morales would remain detained. Dkt. 12-7 ("Form I-286").

Later that day, Bernal Morales was transferred to Delaney Hall Detention Facility in Newark, New Jersey, where he remains. Rodriguez Decl. ¶ 11.

**C. This Litigation**

On August 6, 2026, Bernal Morales, through counsel, filed this petition under 28 U.S.C. § 2241. He claims that his arrest and ongoing detention are unlawful because ICE failed to

---

Alien, Dkt. 12-2; a Warrant for Arrest of Alien, Dkt. 12-5; a Notice to Appear, Dkt. 12-6; and a Notice of Custody Determination, Dkt. 12-7 ("Form I-286").

undertake any individualized consideration of his circumstances in deciding to arrest and detain him, as required by § 1226. Pet. ¶ 18. He alleges that the only justifications ICE gave him at the time of his arrest were "that beds are available and that he had no status"; neither, he argues, is an adequate basis for his arrest. *Id*. ¶ 4.

The same day, on Bernal Morales's request for emergency relief, the Court set a briefing schedule and scheduled a hearing. Dkt. 7. On August 11, 2026, respondents (collectively, "ICE" or "the Government") opposed, Dkt. 11 ("Opp."), and filed supporting documents, *see* note 1. On August 13, 2026, the Court held a hearing, at which counsel proffered facts and made legal arguments.

## II. Applicable Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *see also Trump v. J.G.G.*, 145 S. Ct. 1003, 1005–06 (2025).

## III. Discussion

Bernal Morales argues that his arrest and detention are governed by § 1226(a); that ICE did not base its decision to detain him on an individualized custody determination as required by that statute; and that ICE's detention decision thus deprived him of due process. In opposing the petition, ICE counters—contrary to the paperwork it completed at the time it detained Bernal Morales—that his arrest was pursuant to § 1225, under which no such individualized process or justification for the detention is due. Alternatively, although its counsel retreated from this

position at the Court's August 13 hearing, ICE contended in its opposition papers that, even if § 1226(a) governs, ICE had made the required individualized determination in deciding to detain Bernal Morales.

Bernal Morales's petition thus raises, in sequence, three questions.

First, which of two provisions of the INA governs Bernal Morales's detention? ICE, notwithstanding having processed Bernal Morales under § 1226(a), now contends that it did so in error, and that § 1225(b)(2)(A) applies, under which detention is generally mandatory such that individualized consideration of factors relative to the noncitizen is not required. Bernal Morales counters that § 1225(b)(2)(A) does not apply, and that the only available basis for detention was § 1226(a), as ICE recognized in real time. Under § 1226(a), ICE may discretionarily detain a noncitizen, but it must afford him procedural rights, including making an individualized determination whether he should be detained and, upon detention, furnishing him a bond hearing. *See Qasemi v. Francis*, No. 25 Civ. 10029, 2025 WL 3654098, at *5 (S.D.N.Y. Dec. 17, 2025).

Second, assuming that § 1226(a) applies, did ICE's detention of Bernal Morales violate his right to due process? Salient to that issue, ICE conceded at argument that it did not have any individualized basis to detain Bernal Morales, and that it detained him on August 6, 2026 solely based on its perception that he was subject to § 1225(b)(2)(A), which mandates detention.

Third, assuming a due process violation, is the appropriate relief a bond hearing or Bernal Morales's immediate release?

**A. The Statutory Basis for Bernal Morales's Detention**

The Court finds, for two reasons, that Bernal Morales was detained under § 1226, not § 1225. First, ICE squarely so represented in the paperwork it completed at the time of his detention. Second, as the significant majority of courts has held in cases involving noncitizens

who were released into the United States upon arrival and arrested much later, § 1225(b) does not apply to such arrests, which are governed instead by § 1226(a).

### 1. ICE's Real-Time Statements as to the Basis for the Detention

At the time it detained Bernal Morales, ICE stated that it was doing so pursuant to § 1226(a). Its warrant for his arrest and the Form I-286 it completed following his arrest each identified that statute as the sole basis for his detention. In response to Bernal Morales's § 2255 petition, however, ICE switched gear. It now states that, in fact, the detention had been pursuant to § 1225(b).

This is not the first case in which ICE reversed course after a § 2255 challenge was brought to a detention it categorized in real time as under § 1226(a). As Judge Subramanian has chronicled, ICE, beginning in 2025, "has repeatedly engaged in the same behavior displayed here. It has detained noncitizens pursuant to § 1226(a), then, only afterward, argued that they were instead detained under § 1225(b)(2)." *J.G.O. v. Francis*, 2025 WL 3040142, at *2 (S.D.N.Y. Oct. 28, 2025).

ICE's characterization of the basis for a detainee's arrest has consequences. A detainee's "arrest on a warrant issued under [§] 1226 . . . undermines the government's argument that he is subject to mandatory detention under [§] 1225(b)(2)(A)." *Lepe v. Andrews*, 801 F.Supp.3d 1104, 1116–17 (E.D. Cal. 2025). Accordingly, where ICE invokes § 1226(a) at the point of detention and then takes the contrary position in litigation, this Court has held that the agency's initial representations must be afforded weight. *See Yao v. Almodovar*, 813 F.Supp.3d 461, 467–68 (S.D.N.Y. 2025). Numerous other courts have similarly held.[2] In such cases, a court "cannot

---

[2] *See, e.g.*, *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 486 (S.D.N.Y. 2025); *Sergeev v. Orange Cnty. Jail*, No. 26 Civ. 3280, 2026 WL 1382958, at *4 (S.D.N.Y. May 18, 2026); *Artiga*

credit [ICE's] new position as to the basis for [the] detention, which was adopted post hoc and raised for the first time in this litigation." *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 486 (S.D.N.Y. 2025). Instead, "ICE is properly held to its representation, when it detained [Bernal Morales], as to the legal basis for that action." *Yao*, 813 F.Supp.3d at 468; *see also id*. at 467 ("A 'post hoc rationalization' first articulated in litigation . . . carries little weight.") (citing *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 21 (2020)).

**2. Statutory Construction of §§ 1225(b) and 1226(a)**

That § 1226(a), not § 1225(b), applies to the arrests of noncitizens who had earlier entered the United States and thereafter remained here pending removal is also substantively correct.

In the last year, hundreds of federal district courts have grappled with which provision applies to the arrest of a noncitizen not on arrival at the border but later, in the interior. The flood of litigation on this issue began in summer 2025, when ICE "changed [its] long-settled practice" and "began arguing that [] § 1225(b)(2)(A) prohibits the setting of bond for all inadmissible noncitizens . . . unlawfully present in the United States." *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026). As relevant here, § 1225 applies to an "applicant for admission" who is "seeking admission" to the country. § 1225(b)(2)(A). In proceedings in district courts around the country, ICE has construed that statute to use the terms "applicant for admission" and "seeking admission" interchangeably, such that § 1225 would apply broadly to all applicants for admission, even those arrested inside the United States long after entry. *See, e.g.*, *Barbosa da Cunha v. Freden*, No. 25 Civ. 6532, 2025 WL 3280575, at *4 (W.D.N.Y. Nov.

---

*v. Genalo*, No. 25 Civ. 5208, 2025 WL 2829434, at *6 (E.D.N.Y. Oct. 5, 2025); *J.U. v. Maldonado*, 805 F.Supp.3d 482, 492 (E.D.N.Y. 2025); *Lepe*, 801 F.Supp.3d at 1116–17.

25, 2025), *aff'd, Barbosa da Cunha*, 175 F.4th 61; *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25 Civ. 24535, 2025 WL 2938369, at *3 (S.D. Fla. Oct. 15, 2025); *Maldonado Vazquez v. Feeley*, 805 F.Supp.3d 1112, 1138 (D. Nev. 2025).

The vast majority of district courts, however, rejected ICE's construction. In the main, these courts reasoned that ICE's construction failed to give independent effect to the phrase "seeking admission," and thus breached the canon against superfluity. *See, e.g.*, *Hyppolite v. Noem*, 808 F.Supp.3d 474, 486–87 (E.D.N.Y. 2025) (collecting cases). This Court was among the courts to so hold. *See Yao*, 813 F.Supp.3d at 471.

In this majority view, "seeking admission" is not interchangeable with "applicant for admission," but instead requires some affirmative action by the noncitizen "to obtain authorized entry." *Maldonado Vazquez*, 805 F.Supp.3d at 1138; *see also Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026) ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."); *Lepe*, 801 F.Supp.3d at 1114 ("'[S]eeking admission' implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.") (quoting *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 781 (E.D. Mich. 2025), *aff'd*, 175 F.4th 713 (6th Cir. 2026)). But, at the point that a noncitizen is apprehended in the interior, the time for "seeking admission" has passed. As Judge Ho aptly analogized, "someone who enters a movie theater without purchasing a ticket . . . would not ordinarily then be described as 'seeking admission' to the theater." *Lopez Benitez*, 795 F.Supp.3d at 489. Accordingly, this Court held in *Yao* that, "as a matter of statutory construction and with statutory exceptions not applicable here, § 1225 applies to arriving noncitizens, and § 1226 governs the process of arresting and detaining noncitizens who have

entered the United States and remained here pending their removal." 813 F.Supp.3d at 471 (numerous citations omitted).

This issue has also divided the courts of appeals. *Compare Guerrero Orellana v. Moniz*, No. 25-2152, 2026 WL 2352042, at *17 (1st Cir. Aug. 13, 2026) (holding § 1226(a) applicable); *Barbosa da Cunha*, 175 F.4th at 71 (same); *Lopez-Campos*, 175 F.4th at 722 (same); *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *17 (7th Cir. July 30, 2026) (same); *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *26 (9th Cir. July 30, 2026) (same); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1249–50 (10th Cir. 2026) (same); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026) (same), *with Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (holding § 1225(b) applicable); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) (same).

*Barbosa da Cunha v. Freden*, *supra*, resolved this question in the Second Circuit. Consistent with the majority view among district courts, the panel held that noncitizens arrested for the first time in the interior are not "seeking admission" when detained and thus fall outside the scope of § 1225. *Barbosa da Cunha*, 175 F.4th at 71. The panel examined the "plain language" of §§ 1125 and 1226, which it found "reinforced" by "statutory context, structure, history, and purpose, as well as nearly three decades of Executive Branch practice enforcing the immigration laws with that understanding," and Congress's acquiescence in that practice. *Id*. at 71. It concluded that "Congress [did not] intend to mandate the detention of noncitizens who are 'applicants for admission' but not 'seeking admission,' such as illegal entrants, like Petitioner, who have nonetheless lived in the United States for a substantial time." *Id*. at 78. Instead, noncitizens living in the interior and arrested here after having entered without inspection or

authorization are subject to § 1226(a) and are due the procedural protections secured by that provision. *Id*. at 96.

To be sure, as ICE notes, *Barbosa da Cunha* does not literally control this case. *Barbosa da Cunha* involved a noncitizen who had entered the country undetected and was later arrested in the interior. Bernal Morales, in contrast, was apprehended at the border, paroled into the United States, and, years after his parole expired, arrested anew. *See* Opp. at 3. Nonetheless, most district courts in this Circuit to consider the question have concluded that under the construction held decisive in *Barbosa da Cunha*, § 1225(b) does not apply to noncitizens whose parole has expired and whom ICE thereafter takes into custody. These include, in this District, thoughtful decisions by Judges Torres, *see J.H.F. v. Arteta*, No. 26 Civ. 4076 (AT), 2026 WL 1724066, at *5–6 (S.D.N.Y. June 14, 2026), Liman, *see Simms v. Arteta*, No. 26 Civ. 5712 (LJL), 2026 WL 2076009, at *3 (S.D.N.Y. July 17, 2026), and Caproni, *see Eltayib v. Genalo*, No. 26 Civ. 6090 (VEC), 2026 WL 2364647, at *2 (S.D.N.Y. Aug. 14, 2026); *see also Gonzalez v. Rhoney*, No. 26 Civ. 1435, 2026 WL 2327690, at *7–8 (N.D.N.Y. Aug. 12, 2026); *R.M.R. v. Genalo*, No. 26 Civ. 4358, 2026 WL 2211009, at *3–4 (E.D.N.Y. July 31, 2026); *Robles Escalona v. Warden, MDC Brooklyn*, No. 26 Civ. 3920, 2026 WL 2018505, at *3 (E.D.N.Y. July 13, 2026); *Hernandez Villasmil v. Blanche*, No. 26 Civ. 713, 2026 WL 1235068, at *6 (N.D.N.Y. May 5, 2026). As Judge Liman has put the point, "an individual, such as the petitioner in [*Barbosa da*] *Cunha*, who is an applicant for admission but who entered the country years prior and is 'now seeking only relief from removal' is not seeking admission and is not subject to detention under Section 1225." *Simms,* 2026 WL 2076009, at *3. That logic equally applies to Bernal Morales. He has resided in the United States for more than four years, including nearly four years since his parole term expired, "and is 'now seeking only relief from removal.'" *Id.*

ICE counters that the expiration of a noncitizen's parole should be treated as returning him to the pre-parole status in which he stood when apprehended at the border. There is some authority in this District for this position, specifically, Judge Cronan's decision in *Rana v. Genalo*, holding that a petitioner subject to expedited removal under § 1225(b)(1) remains an admission seeker and subject anew to § 1225 upon expiration of his parole. No. 26 Civ. 849, 2026 WL 1863815, at *5–7 (S.D.N.Y. June 29, 2026) (citing § 1182(d)(5)(A) of the INA, which provides that upon the termination of parole the noncitizen "shall . . . be returned to the custody from which he was paroled"). But, as Judge Liman rejoins, that theory requires adopting "a legal fiction," in which the noncitizen is treated "as though he were again standing at the border seeking admission, regardless of the amount of time he has resided in the country." *Simms*, 2026 WL 2076009, at *3 (rejecting *Rana*'s theory); *see also Salgado v. Francis*, No. 25 Civ. 6524, 2026 WL 915304, at *6 (S.D.N.Y. Apr. 3, 2026) ("Hundreds of district court[] decisions have rejected the 'entry fiction' narrative that the Government peddles here."). And, whatever force that legal fiction might have in a hypothetical case in which ICE arrested the parolee immediately upon the expiration of his parole term, that fiction is impossible to credibly sustain in this case, in which the parole term of the petitioner noncitizen expired nearly four years before ICE elected to detain him, during which period the petitioner lived in the community without incident and while pursuing an asylum claim.

The Court therefore holds, consistent with the majority of judges in the District to consider this point and with a growing number of district judges elsewhere, that § 1225(b)(2)(A) does not authorize a paroled noncitizen's confinement after the expiration of his parole, and that the arrest of noncitizens under these circumstances is instead governed by § 1226(a). *See Eltayeb*, 2026 WL 2364647, at *2; *Simms*, 2026 WL 2076009, at *3; *J.H.F.*, 2026 WL 1724066,

at *5–6; *Salgado*, 2026 WL 915304, at *5; *Qasemi*, 2025 WL 3654098, at *11–12; *Lopez Benitez*, 795 F.Supp.3d at 483–91; *see also Olivier v. Mullin*, No. 26 Civ. 04561, 2026 WL 2350274, at *2 (E.D.N.Y. Aug. 13, 2026); *Casallos v. Moldonado*, No. 26 Civ. 4175, 2026 WL 2267789, at *5–6 (E.D.N.Y. Aug. 6, 2026); *R.E.G.C. v. Mullin*, No. 26 Civ. 3865, 2026 WL 1959350, at *2 (E.D.N.Y. July 7, 2026); *Khubiev v. Baltasar*, No. 25 Civ. 3955, 2026 WL 864237, at *6 (D. Colo. Mar. 30, 2026); *Xu v. Bondi*, No. 26 Civ. 1765, 2026 WL 836667, at *5 (S.D. Cal. Mar. 26, 2026); *Hernandez Villasmil*, 2026 WL 1235068, at *6.

**B. Due Process**

The decisive issue here therefore is whether Bernal Morales's August 6, 2026 detention complied with § 1226(a), or did not do so, in violation of his due process rights.

Section 1226(a)'s implementing regulations require that a noncitizen detained thereunder be provided an "initial custody determination" and the opportunity to "request amelioration of the conditions under which he or she may be released." 8 C.F.R. § 1236(d)(1). In other words, a noncitizen detained pursuant to § 1226(a) is entitled to "an initial discretionary determination as to whether [he] should be detained or released, and the opportunity for a bond hearing upon detention." *Qasemi*, 2025 WL 3654098, at *5; *see also Lopez Benitez*, 795 F.Supp.3d at 493 ("Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides for an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.").

A failure to abide by this requirement breaches due process. "[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). The Second Circuit has held that the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), determines the adequacy of process in the context of civil immigration confinement. *Id*. at 851. Applying *Mathews*, courts in this Circuit have consistently held that ICE violates a noncitizen's due process rights by detaining him without making the individualized detention decision required by § 1226(a). *See, e.g.*, *Rivera Esperanza v. Francis*, 817 F.Supp.3d 187, 197–99 (S.D.N.Y. 2025) ("Given the 'complete absence of any reason for Petitioner's arrest under Section 1226, either in the record or in the briefing,' this Court, like so many before it, finds that Mr. Rivera Esperanza's detention violated the Due Process Clause of the Fifth Amendment." (quoting *Tumba v. Francis*, 813 F.Supp.3d 394, 404 (S.D.N.Y. 2025))); *Lopez Benitez*, 795 F.Supp.3d at 491–96 (same); *Yao,* 813 F.Supp.3d at 475–76 (same); *Tumba*, 813 F.Supp.3d at 403–06 (same); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at *2–3 (S.D.N.Y. July 13, 2025) (same); *Valdez v. Joyce*, 803 F.Supp.3d 213, 217–19 (S.D.N.Y. 2025) (same); *Barco Mercado v. Francis*, 811 F.Supp.3d 487, 503–04 (S.D.N.Y. 2025) (same). As these courts have recognized, when ICE fails to make the individualized detention decision required by § 1226(a), "the significant liberty interest at stake, the high risk of erroneous deprivation, and [ICE's] failure to show a significant interest in Petitioner's detention" establish that ICE deprives the detainee of due process. *Valdez*, 803 F.Supp.3d at 219. Put differently, discretionary detention under § 1226(a) "requires the exercise of discretion. Where there is no evidence or argument that such discretion was exercised, detention under that subsection is illegal." *Qasemi*, 2025 WL 3654098, at *13.

The record here establishes that ICE did not make an individualized decision to detain Bernal Morales. Although ICE's paperwork contemporaneous with the August 6 detention identified § 1226(a) as the statutory basis, this paperwork—the arrest warrant and the Form I-

286—were silent as to the agency's impetus for detaining him. After Bernal Morales filed the instant § 2255 petition, ICE abandoned that claim and contended the detention had been pursuant to § 1225(b)(2)(A), under which detention is mandatory. And although ICE initially suggested the contrary, at the August 13 hearing, Government counsel forthrightly acknowledged that the agency had not made an individualized determination as to this petitioner. Rather, counsel conceded that ICE had acted based on the perception (contrary to its paperwork) that § 1225(b) applied, such that an individualized basis for detaining him was unnecessary:

> "THE COURT: 'Is the only reason that you have been given by [ICE] for Mr. Morales's being taken into custody that the agency perceived custody to be mandatory under 1225?'
>
> GOVERNMENT COUNSEL: 'Yes, that is the only specific reason.'
>
> THE COURT: 'Can I assume that if there were some other reason that was specific to him, you would know it and would be proffering it to me?'
>
> COUNSEL: 'Yes, that is [] fair.'"

Tr. at 21–22.

Counsel's acknowledgement definitively establishes that there was no individualized basis for Bernal Morales's detention. ICE's errant assessment as to the governing statute—the agency's admittedly sole basis for the detention decision—does *not* qualify as an individualized justification. *See J.H.F.*, 2026 WL 1724066, at *7; *Molina Lara v. Genalo*, No. 26 Civ. 1424, 2026 WL 764539, at *3 (E.D.N.Y. Mar. 18, 2026). As such, unavoidably, Bernal Morales "was entitled [under § 1226(a)] to more process than he received." *Lopez Benitez*, 795 F.Supp.3d at 495 (quoting *Valdez*, 803 F.Supp.3d at 219); *see also Qasemi*, 2025 WL 3654098, at *14 (individualized determination not afforded where "the Government could not point to any exercise of discretion that determined" the petitioner "was a flight risk or posed a danger to the community, and could not offer a single other reason why [he] was detained, or why it would

have been in the public interest for DHS to do so"); *Yao*, 813 F.Supp.3d at 466 (same, where "ICE concedes that, in detaining [the petitioner], it did not exercise discretion or consider his individual circumstances"); *Lopez Benitez*, 795 F.Supp.3d at 494 (same, where "there is nothing to suggest that DHS exercised any discretion *at all* in detaining" the petitioner). In light of the barren record of individualized reasons to detain Bernal Morales, the Court need not consider what types of individualized justifications would satisfy § 1226(a).[3]

Accordingly, on the undisputed facts, ICE deprived Bernal Morales of due process when it detained him on August 6 without an individualized justification and based solely on the agency's errant legal conclusion that no such justification was needed.

### C. Remedy

ICE urges, as a remedy were the Court to find an unlawful detention, that Bernal Morales be afforded a bond hearing. And, it contends, the Form I-286 that Bernal Morales was issued at the time of his detention offered him such a hearing.[4]

A bond hearing, however, would not test whether there had been an individualized basis to detain Bernal Morales. It would test whether—considering such factors as employment and

[3] *See, e.g.*, *Martinez-Lopez v. Reid*, No. 26 Civ. 2893 (PAE), 2026 WL 1133933, at *3–4 (S.D.N.Y. Apr. 27, 2026) (recent arrest for a violent crime); *Gunduzalp v. Joyce*, No. 26 Civ. 2330, 2026 WL 948736, at *3 (S.D.N.Y. Apr. 8, 2026) (tip, bearing indicia of credibility, that petitioner posed a national security threat); *Sharifzoda v. Orange Cnty. Jail*, No. 26 Civ. 2486, 2026 WL 851378, at *1 (S.D.N.Y. Mar. 27, 2026) (recent arrest for domestic violence–related assault); *Gomez-Ramirez v. Noem*, No. 26 Civ. 1860, 2026 WL 734945, at *2 (S.D.N.Y. Mar. 16, 2026) ("long arrest record, alleged serious gang affiliations, and recent convictions for vehicular-related crimes"); *Guachambala v. Lyons*, No. 26 Civ. 1835, 2026 WL 686154, at *2 (S.D.N.Y. Mar. 10, 2026) (outstanding criminal charge for drunk driving); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (pendency of judicial review of a removal order).

[4] The text of that form is unclear whether the detainee is being offered a bond hearing or a forum to test whether the arrest was based on individualized circumstances. *See* Form I-286 ("I [do / do not] request an immigration judge review of this custody determination."). As counsel for both parties agreed at the hearing, however, that provision refers to a bond hearing. Tr. at 16, 26-30.

community ties, as developed by the parties in the run-up to the hearing—he presents a risk of flight or a danger to the community, and if so, whether conditions of release could guard against those outcomes. That hearing is not, however, aimed at determining whether the decision to detain a noncitizen was based on an individualized determination as to him. *See Chipantiza-Sisalema*, 2025 WL 1927931, at *3. And ICE's ability to develop such a record between the detention and the bond hearing would not substitute for the required individualized determination for the detention decision. *See Chen v. Almodovar*, No. 26 Civ. 291, 2026 WL 172883, at *3 (S.D.N.Y. Jan. 22, 2026) (A bond hearing "is no substitute for the requirement that [the Government] engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." (quoting *Chipantiza-Sisalema*, 2025 WL 1927931, at *3)).

Accordingly, as this Court has recognized, where "ICE violated [a noncitizen's] due process rights by arresting and detaining him under § 1226 without any exercise of discretion," an after-the-fact bond hearing "by definition, would not and cannot cure that constitutional violation," and immediate release is the appropriate remedy. *Yao*, 813 F.Supp.3d at 477; *see also Y- C- v. Genalo*, No. 25 Civ. 6558, 2025 WL 3653496, at *7 (E.D.N.Y. Dec. 17, 2025) ("no relief short of petitioner's immediate release would be appropriate or sufficient" given the constitutional deprivation suffered); *C.A.R. v. Genalo*, No. 26 Civ. 4275, 2026 WL 1506417, at *2 (S.D.N.Y. May 29, 2026) (same); *Silva Rueda v. Catletti*, No. 26 Civ. 2977, 2026 WL 1194956, at *4 (S.D.N.Y. May 1, 2026) (same); *Menjivar Giron v. Genalo*, No. 26 Civ. 1714, 2026 WL 809965, at *6 (E.D.N.Y. Mar. 24, 2026) (same); *Colindres v. Tellez*, No. 26 Civ. 663, 2026 WL 509493, at *3 (E.D.N.Y. Feb. 23, 2026) (same); *Han v. Noem*, 824 F.Supp.3d 383, 393–94 (S.D.N.Y. 2026) (same); *Chen*, 2026 WL 172883, at *3 (same); *Ye v. Maldonado*, No.

25 Civ. 6417, 2025 WL 3521298, at *9 (E.D.N.Y. Dec. 8, 2025) (same); *Lopez Benitez*, 795 F.Supp.3d at 497 (same); *Rivera Esperanza*, 817 F.Supp.3d at 200–01 (same); *Cardenas v. Almodovar*, No. 25 Civ. 9169, 2025 WL 3215573, at *3 (S.D.N.Y. Nov. 18, 2025) (same); *Cuy Comes v. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491, at *6 (S.D.N.Y. Nov. 14, 2025) (same); *Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (same). That principle requires Bernal Morales's immediate release. Such release, of course, is without prejudice to ICE's ability to later detain Bernal Morales, provided it complies with § 1226(a). *See Yao*, 813 F.Supp.3d at 476–77; *Chipantiza-Sisalema*, 2025 WL 1927931, at *3–4; *Hyppolite*, 808 F.Supp.3d at 494–95.

**D. Fees Under the Equal Access to Justice Act**

Finally, Bernal Morales's § 2255 petition seeks prevailing-party fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

Under the EAJA, a court "shall" award a "prevailing party" reasonable fees and expenses incurred in a civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id*. § 2412(d)(1)(A). "A party prevails if the court grants relief to the party based on an assessment of the merits and thus unquestionably and materially alters the existing legal relationship between the parties." *Rivera Esperanza*, 817 F.Supp.3d at 201 (quoting *Barco Mercado*, 811 F.Supp.3d at 505–06) (cleaned up). Habeas petitions challenging immigration detention are civil actions within the meaning of the EAJA. *Barco Mercado*, 811 F.Supp.3d at 506.

The parties did not address fees at the hearing held on August 13, 2026, which focused on Bernal Morales's application for emergency relief. The Court directs counsel to meet and confer forthwith on whether an award of fees is warranted, and if so, in what in amount. By August 28,

2026, the parties are to file a joint letter stating whether they have reached agreement, and if not, proposing a prompt briefing schedule on this point.

## CONCLUSION

For the above reasons, the Court grants Bernal Morales's petition for a writ of habeas corpus.

ICE is hereby ordered to transport Bernal Morales back to this District forthwith, and immediately thereafter to release him from custody. ICE shall certify compliance with the Court's order by filing an entry on the docket of this case no later than 5 p.m. on August 21, 2026.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 20, 2026
New York, New York